# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

| | |
|---|---|
| **CONNIE TURNER McMILLION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:11-00139** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Remand (Document No. 12.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 15.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Connie Turner McMillion (hereinafter referred to as "Claimant"), filed an application for SSI on January 18, 2008 (protective filing date), alleging disability as of July 1, 2007, due to "bipolar disorder, hepatitis C, problems with neck and back, panic attacks, [and] post traumatic stress disorder."[1] (Tr. at 9, 116-19, 127, 131.) The claim was denied initially and upon

---

[1] Claimant filed previous applications for DIB and SSI on December 16, 1999, and June 19, 2003. (Tr. at 9.) The 1999 application was denied initially and no appeal was pursued. (*Id.*) The 2003 application was denied on January 28, 2005, by decision of an ALJ. (*Id.*) ALJ Kilbane noted that the 1999 application alleged an onset date of July 31, 1999, and the 2003 application alleged an onset date of June 1, 2003. (*Id.*) Because the most current application alleged an onset date of July 1, 2007, the ALJ determined that the prior claims were subject to Administrative Finality and that reopening was not legally justified. (*Id.*)

reconsideration.[2] (Tr. at 75-77, 83-85.) On January 26, 2009, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 86-88.) The hearing was held on June 30, 2009, before the Honorable Brian P. Kilbane. (Tr. at 30-53.) By decision dated September 22, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-18.) The ALJ's decision became the final decision of the Commissioner on December 27, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On March 3, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the

---

[2] On request for reconsideration, Claimant alleged the following additional disabling impairments: "severe vertigo due to medication, left thumb, [and] cervical scrape." (Tr. at 83.)

claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

>    (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>    (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>    (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2009).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since January 18, 2008, the application date. (Tr. at 11, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "hepatitis C, gastroesophageal reflux disease, asthma, a back injury, a thumb injury, a history of poly-substance abuse, a history of a depressive disorder, a history of an anxiety disorder, and a history of a personality disorder[,]", which were severe impairments. (Tr. at 11, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 12, Finding No. 3.) The ALJ then found that Claimant

---

continued need for such an arrangement.

had a residual functional capacity to perform light exertional work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work with the following restrictions: the claimant should avoid concentrated exposure to extreme cold, extreme heat, and extreme vibrations; she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and she should avoid concentrated exposure to hazards such as machinery, heights, etc. (Exhibit B21F and B30F). As for the claimant's mental limitations, she can perform simple, unskilled work in an environment that involves limited contact with people (Exhibit B23F, page 3).

(Tr. at 13, Finding No. 4.) At step four, the ALJ found that Claimant could perform her past relevant work as a maid and an assembler. (Tr. at 17, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform jobs such as an assembler, an inspector, and a hand packer, at the light level of exertion. (Tr. at 18, Finding No. 6.) On these bases, benefits were denied. (Tr. at 18, Finding No. 6.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 11, 1963, and was 45 years old at the time of the administrative hearing, June 30, 2009. (Tr. at 116.) Claimant had a high school education and completed training as a surface miner, and was able to communicate in English. (Tr. at 130, 139.) In the past, she worked as a cashier, short order cook, maid, cook's helper, an assembly worker, and a fast food worker. (Tr. at 17, 48-49, 131-33.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ's decision is internally inconsistent because she cannot perform her past relevant work as a maid or an assembler within the parameters of the ALJ's decision. (Document No. 13 at 3-6.) Citing DOT 323.687-014, she asserts that she cannot perform her past relevant work as a maid because common sense dictates that the job would require more than limited contact with the public and exposure to concentrated environmental irritants. (Id. at 4-5.) Citing DOT 369.687-010, Claimant asserts that she cannot perform her past relevant work as an assembler because the job would require exposure to extreme heat and humidity. (Id. at 5.) Claimant further asserts that the ALJ erred in not following the prior ALJ decision issued in 2005. (Id. at 5-6.) Claimant also asserts that the ALJ failed to address in his decision, the prior ALJ's decision. (Id. at 6.)

7

In response, the Commissioner asserts that contrary to Claimant's allegation, the DOT indicates that a maid would neither be required to interact significantly with people by taking instructions or helping, nor have significant exposure to any environmental conditions or irritants. (Document No. 15 at 6.) Regarding the assembler job, the Commissioner asserts that Claimant incorrectly referenced DOT 369.687-010, which is the job assembler in the laundry, cleaning, dyeing, and pressing industry. (Id. at 6-7.) The Commissioner contends that DOT 706.687-010, production assembler, is more representative of Claimant's work. (Id. at 7.) To that extent, the Commissioner asserts that the job requires light exertion with no exposure to extreme heat, humidity, or any other environmental irritants, or interaction with people. (Id.) Furthermore, the Commissioner notes that the ALJ also found that Claimant was capable of performing other jobs that existed in significant numbers in the economy. (Id. at 8.) Regarding the prior ALJ's decision, the Commissioner asserts that pursuant to AR 00-1(4), the ALJ was not bound by the finding contained within the prior denial of Claimant's disability claim. (Id.) The Commissioner finally notes that contrary to Claimant's assertion, the ALJ acknowledged and addressed Claimant's prior two applications. (Id. at 9.)

Analysis.

1. Past Relevant Work.

Claimant first argues that the ALJ's decision that she could perform her past relevant work as a maid and an assembler in accordance with the Dictionary of Occupational Titles ("DOT"), is inconsistent with the ALJ's assessed RFC. (Document No. 13 at 3-5.) Claimant asserts that the maid job, with a DOT occupational code of 323.687-014, requires contact with the public and exposure to concentrated environmental irritants. (Id. at 4-5.) As the Commissioner notes however, DOT 323.687-014 specifically indicates that a cleaner, housekeeping, would not be required to have

significant interaction with people (taking instructions or helping) or to have exposure to environmental irritants. See Dep't of Labor, DOT (4th ed. 1991) (Occupational Code 323.687-014).

Claimant next argues that the ALJ's decision that she could perform her past relevant work as an assembler, with a DOT occupational code of 369.687-010, requires exposure to extreme heat and humidity. (Document No. 13 at 5.) The Court agrees with the Commissioner and finds that DOT 369.687-010, is not representative of Claimant's past work as an assembler. That occupational number has an industry designation of "Laundry, Cleaning, Dyeing, and Pressing Industry," which does not correlate with Claimant's prior work. See Dep't of Labor, DOT (4th ed. 1991) (Occupational Code 369-687-010). Rather, the Court finds, as the Commissioner points out, that DOT occupational code 706.687-010, "Assembler, Production," which pertains to any industry and consists of "repetitive bench or line assembly to mass-produce products" is more representative of Claimant's past relevant work. See Dep't of Labor, DOT (4th ed. 1991) (Occupational Code 706.687-010). Contrary to Claimant's argument, this DOT listing does not require exposure to extreme heat, humidity, or environmental irritants, or interaction with the public. Id. Accordingly, the Court finds that Claimant's arguments are without merit and that the ALJ's decision is not inconsistent with his assessed RFC or the DOT. Alternatively, the Court notes that the ALJ found at step five of the sequential analysis that Claimant was capable of performing other jobs in the economy. Accordingly, the Court finds that for this reason, too, the ALJ's decision does not require remand regarding a step four decision.

2. Prior Decisions.

Claimant next argues that the ALJ was bound by the findings of the previous ALJ who found that Claimant was not able to perform her past relevant work as a maid or an assembler, even though the ALJ found at step five that Claimant was not disabled. (Document No. 13 at 5-6.)

In <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473 (4th Cir. 1999)(King, Circuit Judge), the Fourth Circuit recognized that the "SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." Within the Fourth Circuit, Acquiescence Ruling 00-1(4), 2000 WL 43774 (Jan. 12, 2000), interpreted the <u>Albright</u> decision

> to hold that where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

The SSA explained how it applies the <u>Albright</u> decision within the Fourth Circuit as follows:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.
>
> Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in *Lively*. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in *Albright*. In determining the weight to be given

10

such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

Id., 2000 WL 43774, at *4; see also, Gilliam v. Astrue, 2010 WL 1009726, at *9-12 (S.D. W.Va.).

In the ALJ's September 22, 2009, decision, the ALJ acknowledged that his decision reflected an alleged onset date of July 1, 2007, which was a previously unadjudicated period as the January 28, 2005, decision reflected an alleged onset date of June 1, 2003. The ALJ therefore, was not bound by the finding contained in the prior denial of benefits. The Court notes that contrary to Claimant's allegation, the ALJ addressed this matter on the first page of his decision. (Tr. at 9.) Accordingly, the Court finds that the ALJ committed no error regarding his treatment of Claimant's prior claims.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Remand (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

. The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2012.

R. Clarke VanDervort
United States Magistrate Judge